UNITED STATES DISTRICTR COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| THOMAS A. TURNER, | ) | |
| Plaintiff, | ) | JURY TRIAL DEMAND |
| vs. | ) | |
| | ) | Case No. 4:20-cv-152 |
| WASHINGTON COUNTY SHERIFF BRENT MILLER, | ) | |
| JOSEPH KELTNER Washington County Sheriff Deputy | ) | |
| in his official and individual capacities, | ) | |
| MATTHEW HEIN Washington County Sheriff Deputy | ) | |
| in his official and individual capacities, | ) | |
| TROY HILDRETH Washington County Sheriff Deputy | ) | |
| in his official and individual capacities, | ) | |
| CHERYL BAKER and ANDREAS BAKER, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

Plaintiff Thomas A. Turner ("Turner"), for his Complaint against Defendants Washington County Sheriff Brent Miller ("Sheriff"), Joseph Keltner Washington County Sheriff Deputy ("Captain Keltner"), Matthew Hein Washington County Sheriff Deputy ("Deputy Hein"), Troy Hildreth Washington County Sheriff Deputy ("Deputy Hildreth"), Cheryl Baker ("Cheryl") and Andreas Baker ("Andy") (collectively the "Defendants") states as follows:

Introduction

1. This is an action for money damages, declaratory and injunctive relief brought pursuant to 42 U.S.C. §§ 1983 and 1988; and the Fourth and Fourteenth Amendments to the United States Constitution against Captain Keltner, Deputy Hein and Deputy Hildreth, sheriff deputies of the Washington County Sheriff's Department, in their individual and official capacities and against the Sheriff.

2. Deputy Hein, Deputy Hildreth and Captain Keltner made an unreasonable seizure of Turner's person and falsely imprisoned him without probable cause. These constitutional violations

1

were committed as a result of the policies, customs and training protocols of the Sheriff.

3. Deputy Hildreth and Captain Keltner failed to intervene and ultimately stop the deprivations and violations of Turner's constitutional right to be free from unlawful seizure, false imprisonment and wrongful criminal prosecution. These constitutional violations were committed as a result of the policies, customs and training protocols of the Sheriff.

4. This is also an action for money damages, declaratory and injunctive relief brought under the laws of the State of Indiana against Cheryl and Andy.

5. Cheryl and Andy made knowingly false criminal accusations about Turner under oath to Deputy Hein and Deputy Hildreth that resulted in his wrongful arrest and false imprisonment.

6. Cheryl and Andy's knowingly false criminal accusations about Turner were made maliciously for the desired purpose of fabricating probable cause to facilitate the wrongful institution of a criminal prosecution against Turner by the Washington County Prosecutor.

7. Cheryl and Andy engaged in extreme and outrageous conduct that intentionally or recklessly caused Turner severe emotional distress.

Jurisdiction and Venue

8. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 over Turner's cause of action arising under the Constitution of the United States and 42 U.S.C. § 1983, and pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court has supplemental jurisdiction over Turner's causes of action arising under Indiana state law pursuant to 28 U.S.C. § 1367.

9. Venue lies in the United state District Court for the Southern District of Indiana because a substantial part of the events or omissions giving rise to Turner's claims occurred in Salem, Indiana. 28 U.S.C. § 1391(b)(2).

10. Divisional venue is in the New Albany Division because the events leading to the claims for relief arose in Washington County, Indiana.

Parties

11. Turner is an adult citizen and resident of Salem, Washington County, Indiana. At all relevant times, Turner resided at 965 South Orchard Road, Salem, Indiana 47167. Turner does not live within the boundaries of any municipality. Turner possesses a valid Indiana License to carry a handgun.

12. The Sheriff is a duly elected official charged with keeping the peace and enforcing the law. In that capacity, the Sheriff implemented and executed official government policy that caused injury to Turner.

13. The Sheriff supervises all the operations within the Washington County Sheriff's Department and the performance of staff, including but not limited to Washington County Sheriff Deputies.

14. The Sheriff is obligated to train and cause to be adequately trained the persons employed as Washington County Sheriff Deputies, who are responsible for keeping the peace and enforcing the law in a manner that ensures compliance with local, state and federal civil rights laws.

15. The Sheriff acted under the color of and pursuant to authority vested in him under the Indiana Constitution. His acts and/or edicts may fairly be said to represent the official policies of the Washington County Sheriff's Office. At all times material hereto, the Sheriff acted under and pursuant to the laws, ordinances, policies, practices, customs, regulations and usages of the Washington County Sheriff's Department.

16. Captain Keltner was a Washington County Sheriff's Deputy employed, trained and supervised by the Sheriff when the relevant events occurred. At all times Captain Keltner acted pursuant to the official policies, practices, customs, usages and training of the Sheriff, and his acts and edicts may fairly be said to represent those policies, practices, customs, usages and training. Captain Keltner is sued in his individual and official capacities.

17. Deputy Hein was a Washington County Sheriff's Deputy employed, trained and

supervised by the Sheriff when the relevant events occurred. At all times Deputy Hein acted pursuant to the official policies, practices, customs, usages and training of the Sheriff, and his acts and edicts may fairly be said to represent those policies, practices, customs, usages and training. Deputy Hein is sued in his individual and official capacities.

18. Deputy Hildreth was a Washington County Sheriff's Deputy employed, trained and supervised by the Sheriff when the relevant events occurred. At all times Deputy Hildreth acted pursuant to the official policies, practices, customs, usages and training of the Sheriff, and his acts and edicts may fairly be said to represent those policies, practices, customs, usages and training. Deputy Hildreth is sued in his individual and official capacities.

19. Cheryl is an adult citizen and resident of Salem, Washington County, Indiana. At all relevant times, Cheryl resided at 127 West Woodland Drive, Salem, Indiana 47167.

20. Andy is an adult citizen and resident of Salem, Washington County, Indiana. At all relevant times, Andy resided at 127 West Woodland Drive, Salem, Indiana 47167.

21. Cheryl and Andy are husband and wife, and reside in the residential property immediately adjacent to Turner's personal residence. Their property abuts Turner's west property line, on the other side of a dense tree line at the rear of Turner's back yard. Cheryl and Andy do not live within the boundaries of any municipality.

### Background

22. For some time before the events giving rise to this case, Cheryl and Andy had been feuding with Turner concerning the use of a certain portion of Turner's residential property, which afforded Cheryl and Andy's entry onto and egress from their residential property.

23. On July 27, 2018, Turner was at his personal residence test firing firearms he had recently purchased.

24. Turner test fired his recently purchased firearms by standing in his back yard within

close proximity of her personal residence, pointing the firearm down and a couple feet away from the front of his body, and firing single rounds periodically into the ground.

25. Turner test fired his firearms on ten (10) occasions.

26. Before Turner test fired his firearms, he contacted both the Washington County Sheriff's Department and the Indiana State Police to confirm that it was permissible and legal for him to do so.

27. Turner began test firing at approximately 2:36:43 p.m., and finished at approximately 4:55:00 p.m.

28. All of Turner's test firings were captured on video by Camera 4 of his home security system.

29. Turner faced away from Camera 4 toward the north and back of his property each time he came out to test fire his firearm, usually pointing and/or aiming the firearm down and slightly to the east.

30. At not point during Turner's test firing activities on July 27, 2018 did he point and/or aim any of his firearms toward the direction of Cheryl and Andy's residential property.

31. At no point during Turner's test firing activities on July 27, 2018 did he point and/or aim any of his firearms toward the direction of Cheryl and Andy's personal residence.

32. At no point during Turner's test firing activities on July 27, 2018 did he point and/or aim any of his firearms in an upward trajectory.

33. At no point during Turner's test firing activities on July 27, 2018 did he point and/or aim any of his firearms toward the direction of Cheryl.

34. At no point during Turner's test firing activities on July 27, 2018 did he point and/or aim any of his firearms toward the direction of Andy.

35. At no point during Turner's test firing activities on July 27, 2018 did he point and/or aim any of his firearms toward the direction of a vehicle owned, operated and/or containing Cheryl and/or

Andy.

36. At no point during Turner's test firing activities on July 27, 2018 did he point and/or aim any of his firearms toward the direction of another person.

37. Cheryl arrived home from work shortly after 2:00 p.m. on July 27, 2018.

38. At approximately 2:30 p.m. on July 27, 2018, Cheryl exited her home and headed north along the driveway toward the back of her property to retrieve the mail from the mailbox.

39. As Cheryl neared the mailbox, she heard approximate 4-5 gunshots coming from the general area of Turner's property.

40. Cheryl did not observe or see Turner when she heard the approximate 4-5 gunshots as she reached the mailbox.

41. When Cheryl returned to her home after retrieving the mail from the mailbox, she observed Turner on his property in his backyard.

42. As Cheryl made her way back into her home, she heard approximately 2-3 gunshots but did not observe or see Turner discharge a firearm.

43. At no point during July 27, 2018 did Cheryl see or observe Turner aim and/or point a firearm.

44. At no point during July 27, 2018 did Cheryl see or observe Turner discharge a firearm.

45. At no point during July 27, 2018 did Cheryl see or observe anyone discharging a firearm.

46. At no point during July 27, 2018 did Cheryl see or observe any of the gunshots going off.

47. Cheryl did not find and never located any physical damage to any aspect of her property as a result of the gunshots she heard throughout the afternoon of July 27, 2018.

48. At no point during July 27, 2018 did Cheryl believe that she was at a substantial risk for

bodily injury because of the gunshots she heard.

49. At approximately 4:20 p.m. on July 27, 2018, Andy approached the driveway to his residential property in his truck after work when he heard gunshot.

50. Andy did not observe and/or see Turner when he heard the gunshot while turning into his driveway in his truck.

51. As Andy was driving toward his home along the driveway he heard another gunshot.

52. Andy did not observe and/or see Turner when he heard the second gunshot.

53. At no point during July 27, 2018 did Andy see or observe Turner aim and/or point a firearm.

54. At no point during July 27, 2018 did Andy see or observe Turner discharge a firearm.

55. At no point during July 27, 2018 did Andy see or observe anyone discharging a firearm.

56. At no point during July 27, 2018 did Andy see or observe any of the two (2) gunshots going off.

57. Andy did not find and never located any physical damage to any aspect of his property as a result of the gunshots he heard during the early evening of July 27, 2018.

58. At no point during July 27, 2018 did Andy believe that he was at a substantial risk for bodily injury because of the gunshots he heard.

59. Shortly after Andy arrived home at approximately 4:27 p.m. on July 27, 2018, Cheryl contacted the Washington County Sheriff's Department to complain that Turner was discharging a firearm into the air toward the direction of homes other than hers.

60. Sometime shortly after 4:27 p.m. on July 27, 2018, Deputy Hein was dispatched to Cheryl and Andy's residential property in response to Cheryl's complaint that Turner was shooting a handgun into the air in the direction of other residences.

61. Upon arrival at Cheryl and Andy's personal residence, Deputy Hein interviewed and

obtained oral and written statements from both Cheryl and Andy.

62. Cheryl and Andy's separate written statements to Deputy Hein were independently affirmed under the penalties for perjury was true and correct.

63. In her oral and written statements to Deputy Hein, Cheryl stated:

(a) she personally saw and observed Turner aim a firearm in her direction on two (2) or three (3) separate occasions on July 27, 2018; and

(b) she personally saw and observed Turner discharge a firearm in a trajectory over her head on two (2) or three (3) separate occasions on July 27, 2018.

64. Cheryl's oral and written statements to Deputy Hein concerning Turner on July 27, 2018 were knowingly false and willfully communicated with the intention of unjustly harming Turner's reputation and standing in the community.

65. In his oral and written statements to Deputy Hein, Andy stated:

(a) he personally saw and observed Turner aim a firearm in his direction while he was in his truck attempting to turn into his driveway on July 27, 2018;

(b) he personally saw and observed Turner discharge a firearm in a trajectory over the truck he was driving while he was attempting to turn into his driveway on July 27, 2018;

(c) he personally saw and observed Turner aim a firearm in his direction a second time while his truck had entered onto the driveway on July 27, 2018;

(d) he personally saw and observed Turner discharge a firearm a second time in a trajectory over the truck he was driving while traversing his driveway on July 27, 2018;

(e) he personally saw and observed Turner aim a firearm in his direction on three (3) separate previous occasions prior to the purported events of July 27, 2018; and

  (f) he personally saw and observed Turner discharge a firearm in a trajectory over his person on three (3) separate previous occasions prior to the purported events of July 27, 2018.

66. Andy's oral and written statements to Deputy Hein on July 27, 2018 concerning Turner were knowingly false and willfully communicated with the intention of unjustly harming Turner's reputation and standing in the community.

67. At approximately the time Deputy Hein completed his interviews of and obtain the statements from Cheryl and Andy on July 27, 2018, Deputy Hildreth arrived at Cheryl and Andy's residential property.

68. Deputy Hein informed Deputy Hildreth of the sum and substance of Cheryl and Andy's respective statements set forth in paragraphs 63 and 65 above.

69. Thereafter, Deputy Hein and Deputy Hildreth proceeded to Turner's residence to obtain his statement of the events that transpired on July 27, 2018 concerning his use, aiming and discharges of a firearm that was the focus of Cheryl and Andy's complaint to the Washington County Sheriff's Department.

70. Turner informed Deputy Hein and Deputy Hildreth that he had been test firing firearms he had recently purchased on his residential property toward the north and back of his home.

71. Turner informed Deputy Hein and Deputy Hildreth that each time he test fired him firearm on July 27, 2018, he pointed and/or aimed the firearm down before discharging it directly into the ground in close proximity of his person.

72. Turner escorted Deputy Hein and Deputy Hildreth to the location on his property where he had been test firing his firearms on July 27, 2018.

73. Turner informed Deputy Hein and Deputy Hildreth that he did not point and/or aim a firearm on July 27, 2018 up and into the sky.

74. Turner informed Deputy Hein and Deputy Hildreth that he did not discharge a firearm on July 27, 2018 in a trajectory up and into the sky.

75. Turner informed Deputy Hein and Deputy Hildreth that he did not point and/or aim a firearm on July 27, 2018 in a direction toward the line of trees dividing his and Cheryl and Andy's respective residential properties.

76. Turner informed Deputy Hein and Deputy Hildreth that he did not discharge a firearm on July 27, 2018 in a trajectory over the line of trees dividing his and Cheryl and Andy's respective residential properties.

77. Turner informed Deputy Hein and Deputy Hildreth that he did not point and/or aim a firearm on July 27, 2018 in a direction toward anyone's personal residence.

78. Turner informed Deputy Hein and Deputy Hildreth that he did not discharge a firearm on July 27, 2018 in a trajectory toward and/or over anyone's personal residence.

79. Turner informed Deputy Hein and Deputy Hildreth that he has an active and functional security camera surveillance system installed at various locations on the outside of his personal residence, and that one of these surveillance cameras captured him test firing his firearms throughout July 27, 2018.

80. Turner informed Deputy Hein and Deputy Hildreth that the July 27, 2018 recording from Camera 4 of his security camera surveillance system would substantiate his statements to them, and prove that he did not point, aim and/or discharge his firearm toward or near the direction of a person.

81. Deputy Hein and Deputy Hildreth elected not to view and/or obtain a copy of the July 27, 2018 recording from Camera 4 of Turner's security camera surveillance system.

82. Deputy Hein and Deputy Hildreth did not see and observe Turner aim and/or point a firearm on July 27, 2018.

83. Deputy Hein and Deputy Hildreth did not see and observe Turner discharge a firearm on July 27, 2018.

84. Deputy Hein and Deputy Hildreth did not see, observe and/or find any physical damage caused by a projectile being fired from Turner's firearm on July 27, 2018.

85. Deputy Hein and Deputy Hildreth did not confiscate any of Turner's firearms during and after their interview of Turner on July 27, 2018.

86. Deputy Hein and Deputy Hildreth did not place Turner under arrest immediately after they interviewed him at his residential property on July 27, 2018.

87. Following his interview with Deputy Hein and Deputy Hildreth at his residential property, Turner reported to the Washington County Sheriff's Department to better understand what he had done to warrant his investigation for test firing his firearms on his property on July 27, 2018.

88. Upon arrival at the Washington County Sheriff's Department, Turner met with Deputy Hildreth and Captain Keltner to discuss why Deputy Hein had accused him of engaging in criminal recklessness for test firing his firearm into the ground while on his property.

89. Turner notified Deputy Hildreth and Captain Keltner that he did not point, aim and/or discharge his firearm in the direction of a person and/or a residential property.

90. Turner notified Deputy Hildreth and Captain Keltner that he had security surveillance footage that recorded the manner and means by which he had been test firing his firearms on his property on July 27, 2018.

91. Turner invited Deputy Hildreth and Captain Keltner to obtain a copy and view the July 27, 2018 recording from Camera 4 of his security camera surveillance system to verify that he had not pointed, aimed, and/ or discharged his firearm in the direction of a person and/or a residential property.

92. Deputy Hein entered the conversation between Turner, Deputy Hildreth and Captain Keltner and informed Captain Keltner that Cheryl and Andy had complained and reported formally that

Turner had pointed, aimed and discharged a firearm in their direction on numerous occasions while he had been test firing his weapon on July 27, 2018.

93. Deputy Hein advised Captain Keltner that Turner's arrest for criminal recklessness was warranted based upon the statements he received from Cheryl and Andy referenced in paragraphs 63 and 65 above.

94. Captain Keltner and Deputy Hildreth did not caution Deputy Hein against arresting Turner until after they obtained a copy of and viewed the Camera 4 security camera surveillance recording to verify the truthfulness of Cheryl and Andy's oral and written statements.

95. Captain Keltner and Deputy Hildreth did not make any attempt to deter Deputy Hein's unmethodical inclination to arrest Turner for criminal recklessness to prevent the violation of Turner's constitutionally protected civil rights until after the investigation of Cheryl and Andy's statements had been fully investigated and vetted.

96. On July 27, 2018, Deputy Hein placed Turner under arrest for criminal recklessness with a firearm with Captain Keltner's consent and authorization.

97. The law underlying Turner's arrest for criminal recklessness with a firearm was clearly established at the time of his arrest.

98. Turner's conduct on July 27, 2018 while test firing his firearms on his personal property did not create a substantial risk of bodily injury to another person "because there were no people in or near his line of fire." See *Boushehry v. State*, 648 N.E.2d 1174, 1176-1177 (Ind.Ct.App. 1995); and *Elliott v. State*, 560 N.E.2d 1266, 1267 (Ind.Ct.App. 1990).

99. Camera 4 of Turner's security camera surveillance system showed clearly and unequivocally that there were no people in or near his line of fire while he was test firing his firearms on his property on July 27, 2018.

100. On July 31, 2018, Cheryl and Andy submitted a Victim Impact Statement to the

Washington County Prosecutor's Office that stated in pertinent part, Turner "shoots over my head many times."

101. Cheryl and Andy's July 31, 2018 written statement to the Washington County Prosecutor's Office was knowingly false and willfully communicated with the intention to unjustly harming Turner's reputation and standing in the community, and to cause Turner to be subjected to criminal prosecution wrongfully.

102. Turner was prosecuted wrongfully based upon the illegal acts and omissions of Cheryl, Andy, Deputy Hein, Deputy Hildreth and Captain Keltner.

103. Defendants systematically concealed from the Washington County Prosecutor's Office, and misrepresented to them, facts highly material to the decision whether to prosecute Turner and whether to continue prosecuting him right up to and into the trial.

104. Had it not been for the misconduct of the Defendants, Turner would neither have been arrested nor charged.

105. As a direct and proximate result of the acts of the Defendants, Turner suffered the following injuries and damages:

    (a) violation of his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from an unreasonable search and seizure of his person, false imprisonment and wrongful criminal prosecution without probable cause.

    (b) loss of physical liberty;

    (c) fear of imminent period resulting from his wrongful incarceration;

    (d) mental and emotional anguish;

    (e) damage to his reputation and standing in his community; and

    (f) additional financial losses, including the costs associated with defending himself

against the unjust criminal prosecution by the Washington County Prosecutor's Office, as well as with enforcing his civil rights pursuant to Section 1983 and Indiana state laws.

106. The actions of Deputy Hein, Deputy Hildreth and Captain Keltner violated the following clearly established and well settled constitutional rights of Turner:

    (a) freedom from a warrantless arrest by an officer acting on unreliable information as the sole basis of probable cause;

    (b) freedom from the unreasonable seizure of his person; and

    (c) freedom from unwarranted criminal prosecution.

107. At all times relevant, Deputy Hein, Deputy Hildreth and Captain Keltner were acting under the color of law and under color of authority as employees, agents and servants of the Sheriff, and as agents of the State of Indiana.

## Statement of Claims

### COUNT I
*(42 U.S.C. § 1983 Against Captain Keltner, Deputy Hein and Deputy Hildreth)*

108. Turner re-alleges and incorporates by reference ¶¶ 1 through 107.

109. Turner claims damages under 42 U.S.C. § 1983 for the injuries set forth above against Defendants Captain Keltner, Deputy Hein and Deputy Hildreth for violations of his constitutional rights under color of law.

### COUNT II
*(42 U.S.C. § 1983 Against the Sheriff)*

110. Turner re-alleges and incorporates by reference ¶¶ 1 through 107.

111. Prior to July 27, 2018, the Sheriff developed and maintained policies, customs and training protocols exhibiting deliberate indifference to the constitutional rights of persons in Washington County, Indiana, which caused the violations of Turner's rights.

112. It was the policy, custom and the training protocols of the Washington County Sheriff's Department to fail to exercise reasonable case in hiring its sheriff deputies, including Defendants Captain Keltner, Deputy Hein and Deputy Hildreth, thereby failing to adequately prevent constitutional violations on the part of its sheriff deputies.

113. It was the policy, custom and the training protocols of the Washington County Sheriff's Department to inadequately supervise and train its sheriff deputies, including Defendant Captain Keltner, Deputy Hein and Deputy Hildreth, thereby failing to adequately discourage further constitutional violations on the part of its sheriff deputies.

114. As a result of the above described policies, customs and training protocols, sheriff deputies of the Sheriff, including Defendants Captain Keltner, Deputy Hein and Deputy Hildreth, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctions, but would be tolerated.

115. The above described policies, customs and training protocols demonstrate a deliberate indifference on the part of the Sheriff to the constitutional rights of persons within Washington County, Indiana. And were the cause of the violations of Turner's rights alleged herein.

## COUNT III
*(Defamation and Libel Per Se Against Cheryl and Andy)*

116. Turner re-alleges and incorporates by reference ¶¶ 1 through 107.

117. Cheryl and Andy's oral and written statements concerning Turner imputed criminal conduct wrongfully.

118. Cheryl and Andy's oral and written statements concerning Turner were made with malicious aforethought arising, in part, from their on-going real estate dispute with Turner.

119. Cheryl and Andy published their oral and written statements concerning Turner to the Washington County Sheriff's Department, the Washington County Prosecutor's Office, the local news

media, and the citizens and residence of Salem, Indiana, specifically including Turner's friends, relatives and immediate neighbors.

120. Turner is entitled to presumed damages as a natural and probable consequence of the knowingly false oral and written statements made and published by Cheryl and Andy.

## COUNT IV
(*Malicious Prosecution Against Cheryl and Andy*)

121. Turner re-alleges and incorporates by reference ¶¶ 1 through 107.

122. Cheryl and Andy caused to be instituted a criminal prosecution against Turner.

123. Cheryl and Andy acted maliciously.

124. The Washington County Prosecutor's Office instituted a criminal prosecution against Turner based upon the false information Cheryl and Andy published repeatedly about Turner.

125. The criminal prosecution of Turner was instituted without probable cause.

126. The Washington County Prosecutor's Office terminated the criminal prosecution in Turner's favor.

## COUNT V
(*Intentional Infliction of Emotional Distress*)

127. Turner re-alleges and incorporates by reference ¶¶ 1 through 107.

128. Cheryl and Andy engaged in extreme and outrageous conduct that intentionally or recklessly caused Turner severe emotional distress.

129. Cheryl and Andy's treatment of Turner was and is antithetical to human dignity, and their extreme and reckless treatment was and is done not out of necessity but as punishment, retaliation or revenge.

## Prayer for Relief

WHEREFORE, Plaintiff Thomas A. Turner respectfully requests this Court:

A. Enter judgment in his favor and against Defendants Washington County Sheriff Brent Miller, Joseph Keltner, Matthew Hein, Troy Hildreth, Cheryl Baker and Andreas Baker;

B. Enter an order declaring Defendants Joseph Keltner, Matthew Hein and Troy Hildreth's conduct unconstitutional;

C. Award Plaintiff Thomas A. Turner compensatory, incidental, consequential, nominal, liquidated and punitive damages against Defendants Washington County Sheriff Brent Miller, Joseph Keltner, Matthew Hein, Troy Hildreth, Cheryl Baker and Andreas Baker;

D. Award Plaintiff Thomas A. Turner's counsel reasonable attorneys' fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988, and any other applicable provisions of law;

E. Enter a permanent injunction, upon proper motion, requiring Defendant Washington County Sheriff Brent Miller to adopt appropriate policies related to the hiring, training and supervision of his sheriff deputies and agents;

F. Enter a permanent injunction, upon proper motion, requiring Defendant Washington County Sheriff Brent Miller to adopt appropriate policies, procedures and training protocols related to interviews, investigations and probable cause; and

G. Grant Plaintiff Thomas A. Turner such other and further relief as may be just and proper under the circumstances, including but not limited to appropriate injunctive relief.

## Jury Trial Demand

Plaintiff Thomas A. Turner demands a jury trial, pursuant to the Seventh Amendment to the Constitution of the United state, as to all claims for damages.

Respectfully Submitted,

 /s/  Mark J. Pizur
Mark J. Pizur (21380-49)
Attorney At Law
275 Medical Drive, #4186
Carmel, Indiana  46082
Telephone: (317) 506-4887
E-Mail: mark.pizur@hotmail.com

*Attorney for Plaintiff Thomas A. Turner*